IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE MOST WORSHIPFUL
NATIONAL GRAND LODGE, FREE
AND ACCEPTED ANCIENT
YORKRITE MASONS, PRINCE HALL
ORIGIN NATIONAL COMPACT,
U.S.A.,

   Plaintiff,

     v.

UNITED GRAND LODGE GA AF &
AYM, INC., et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:17-CV-2582-TWT

## OPINION AND ORDER

This is a trademark infringement action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 18]. For the reasons stated below, the Motion to Dismiss is GRANTED in part and DENIED in part.

### I. Background

This is a Lanham Act case. The Plaintiff National Grand Lodge is a corporate entity that oversees a network of Masonic lodges throughout the United States.[1] On June 10, 2008, the Plaintiff registered two standard

---

[1] Am. Compl. ¶ 1.

character service marks with the Principal Register of the United States Patent and Trademark Office:

F.A.A.Y.M.[2]

and

THE MOST WORSHIPFUL NATIONAL GRAND LODGE FREE AND ACCEPTED ANCIENT YORKRITE MASONS PRINCE HALL ORIGIN, NATIONAL COMPACT U.S.A.[3]

On August 20, 2013, the Plaintiff received "declarations of incontestability" from the USPTO for both marks.[4] The acronym "F.A.A.Y.M." stands for "Free And Accepted YorkRite Masons."[5] The phrase "Free and Accepted YorkRite Masons," and the term YorkRite in particular, carries great significance in the system of Freemasonry overseen and administered by the Plaintiff.[6]

On or about October 7, 2014, the Plaintiff's "National Grand Master" suspended Defendant Craig Mitchell from the organization for three years.[7] On

---

[2] Am. Compl. ¶ 11.

[3] Am. Compl. ¶ 13.

[4] Am. Compl. ¶¶ 12, 14. Once a registered mark has become incontestible, the registration "shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115.

[5] Am. Compl. ¶17.

[6] *See* Am. Compl. ¶¶ 16-17.

[7] Am. Compl. ¶ 18.

or about January 21, 2015, a high-ranking member of one of the Plaintiff's Georgia subsidiaries made Defendant Mitchell's temporary suspension permanent.[8] News of the expulsion was communicated to Defendant Mitchell.[9] On or about January 31, 2015, the Defendant United Grand Lodge, apparently prior to its incorporation, drafted a "Warrant" authorizing the formation of a new Masonic lodge under the designation of "Ancient Free and Accepted Yorkrite Masons."[10] At some point in February of 2015, Defendant Mitchell and a group of unnamed third parties submitted an application to the State of Georgia to form a business entity with the corporate name "United Grand Lodge GA AF & AYM, Inc."[11] The Georgia Secretary of State issued a Certificate of Incorporation on February 11, 2015.[12] On March 2, 2015, the Plaintiff's legal advisor sent a letter to Defendant Mitchell advising Mitchell that the use of the term "Ancient Free and Accepted York(rite) Masons" and the acronym A.F.A.Y.M. constituted trademark infringement.[13] The Defendants have nevertheless continued to use, display, and advertise the offending terms, both

---

[8] Am. Compl. ¶ 19.

[9] *Id.*

[10] Am. Compl. ¶ 20.

[11] Am. Compl. ¶ 22.

[12] Am. Compl. ¶ 23.

[13] Am. Compl. ¶ 24.

on and offline, in an effort to attract new members to the Defendant United Grand Lodge.[14]

The Plaintiff alleges that the terms that the Defendants are using to advertise their services are confusingly similar to the Plaintiff's registered service marks. According to the Plaintiff, the use of these terms has and will cause the Plaintiff harm by siphoning off new members and by damaging the Plaintiff's national brand.[15] The Plaintiff brings suit under state and federal trademark and fair business law seeking damages and injunctive relief.[16]

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[17] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[18] In a ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as

---

[14] Am. Compl. ¶¶ 28, 36.

[15] Am. Compl. ¶ 45.

[16] Am. Compl. ¶ 58.

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6).

[18] *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

true and construe them in the light most favorable to the plaintiff.[19] Generally, notice pleading is all that is required for a valid complaint.[20] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[21]

### III. Discussion

#### A. Federal Claims

##### 1. Trademark Infringement and Unfair Competition

The Plaintiff brings claims for trademark infringement and unfair competition under Section 43(a) of the Lanham Act.[22] Section 43(a) makes it unlawful for any person to use "in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as

---

[19] *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[20] *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

[21] *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

[22] Am. Compl. ¶¶ 27-48.

to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]"[23]

In order to prevail in a cause of action arising under Section 43(a), the claimant must show "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."[24] The Eleventh Circuit employs a seven factor test in assessing whether a likelihood of confusion exists: (1) the type of mark; (2) the similarity of the marks; (3) the similarity of the goods; (4) the similarity of the parties' retail outlets, trade channels, and customers; (5) the similarity of advertising media; (6) the defendant's intent; and (7) actual confusion.[25]

The Plaintiff alleges facts that state a plausible claim for relief under Section 43(a) of the Lanham Act. The Plaintiff alleges, with documentary support, that it is the holder of two incontestable service marks.[26] The Plaintiff uses these marks in the course of its "business," which involves "maintaining

---

[23] 15 U.S.C. § 1125(a)(1)(A).

[24] *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001).

[25] *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648 (11th Cir. 2007)(*citing Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335–41 (11th Cir.1999)).

[26] Am. Compl.¶¶ 10-14; *see also* Am. Compl. Ex. A; Am. Compl. Ex. B.

and overseeing traditions and coordinating the rules, function, and organization" of its constituent lodges and members.[27] The Plaintiff further alleges that the Defendants have used the phrases "A.F. & A.Y.M." or "Ancient Free and Accepted Yorkrite Masons" to "promote, market, and encourage persons to join the Defendant United Lodge."[28] This terminology is, according to the Plaintiff, confusingly similar to its registered service marks.[29] As a result, the Defendants' marketing practices are "likely to cause confusion" as to the Defendants' authority to practice the "Yorkrite system of Masonry," and wrongly suggest some affiliation between the Defendants and the Plaintiff.[30] Indeed, the Plaintiff alleges that the Defendants have already caused confusion among current and prospective members of the Defendant United Grand Lodge.[31] These facts, if true, are sufficient to give rise to liability under Section 43(a).

The Defendants' arguments to the contrary are unpersuasive. The Defendants first argue that the Plaintiff lacks standing because it has not

---

[27] Am. Compl. ¶¶ 1, 10.

[28] Am. Compl. ¶ 36.

[29] Am. Compl. ¶ 35.

[30] Am. Compl. ¶¶ 28, 37-40.

[31] Am. Compl. ¶ 38 (alleging that current members of Defendant United Grand Lodge "are not able to discern" whether the Defendant United Grand Lodge is sanctioned by the Plaintiff); *see also* Am. Compl. ¶ 43 (alleging that the Defendants' activities are "currently causing actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of ancient rites and services.").

shown "common law rights" to the phrases "A.F. & A.Y.M." or "Ancient Free and Accepted Yorkrite Masons."[32] But the Plaintiff does not allege that it has trademarked either of these phrases–rather, the Plaintiff alleges that the Defendants' use of these phrases is likely to cause confusion. And, while the Plaintiff claims to have been using variations of the service mark "F.A.A.Y.M." since 1847,[33] the Plaintiff's registered service marks provide an independent basis for standing. Second, the Defendants argue that they are not subject to regulation under the Lanham Act because they have not used the offending terminology in interstate commerce.[34] But the Defendants need not have engaged in interstate commerce in order for liability to attach under the Lanham Act. The trademark holder's prior use of the trademark in interstate commerce is sufficient to invoke this Court's jurisdiction.[35] The Plaintiff has alleged that it authorizes the use of its service marks by licensed affiliates in

---

[32]  Defs.' Br. in Supp. of Mot. to Dismiss, at 6-14 [Doc. 18-1].

[33]  Am. Compl. ¶ 15.

[34]  Defs.' Br. in Supp. of Mot. to Dismiss, at 11-12.

[35]  *See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 838 (11th Cir. 1983) (holding that the plaintiff's use of its trademark in cross-state advertising satisfied the "use in commerce" requirement, even without evidence that the defendant had used the mark outside of Georgia); *see also Planetary Motion, Inc.,* 261 F.3d at 1194 ("The term 'use in commerce' as used in the Lanham Act 'denotes Congress's authority under the Commerce Clause rather than an intent to limit the [Lanham] Act's application to profit making activity.") (quoting *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 92-93 (2d Cir. 1997)).

multiple states.[36] This fact is sufficient to satisfy the jurisdictional requirements of the Lanham Act. Finally, the Defendants argue that the Defendant United Grand Lodge's corporate name cannot plausibly be confused with the Plaintiff's service marks when considered in its entirety.[37] The Defendants are undoubtedly correct that the factfinder must take the "overall impression" of the marks into account when assessing whether they are similar. It is unclear, however, why the Defendants think that a factfinder would be precluded as a matter of law from finding that the marks are similar in this particular case. None of the Defendants' proffered arguments establish grounds for dismissal.

The Plaintiff has made out a plausible claim under Section 43(a) against Defendant United Grand Lodge. A separate question arises as to whether the Plaintiff can sustain this action against Defendant Mitchell. Natural persons are subject to suit under the Lanham Act for trademark infringement.[38] An individual may be liable for performing acts of trademark infringement regardless of whether they are performed on behalf of a third party.[39] The

---

[36] Am. Compl. ¶¶ 1, 10.

[37] Defs.' Br. in Supp. of Mot. to Dismiss, at 12-16.

[38] *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).

[39] *Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968) ("There can be no doubt but that a trademark, like a patent, can be infringed by an individual. It is infringed when an individual performs the act or does the things that the patent or trademark law protects against. The fact that the persons thus acting are acting for a corporation also, of course, may make the corporation liable under the doctrine of respondeat superior. It does

Plaintiff alleges that Defendant Mitchell has personally "use[d], display[ed], and advertise[d]" terminology that is confusingly similar to the Plaintiff's service marks, despite the Plaintiff communicating to Defendant Mitchell that his actions constituted trademark infringement.[40] Defendant Mitchell may be directly liable for acts of trademark infringement in which he personally participated. Defendant Mitchell may also be liable for contributing to the trademark infringement committed by Defendant United Grand Lodge in which he did not personally participate. An individual who "actively and knowingly" causes a business to engage in trademark infringement is personally liable.[41] The court must ask whether the individual "actively participated as a moving force in the *decision* to engage in the infringing acts, or otherwise caused the infringement as a whole to occur."[42] Here, the Plaintiff alleges that Defendant Mitchell was one of the incorporators of the Defendant United Grand Lodge,[43] that he played a part in the design of the corporate name,[44] and that he played a part in the decision to "authorize" the use of the corporate name to contact

---

not relieve the individuals of their responsibility.").

[40] Am. Compl. ¶ 28.

[41] *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).

[42] *Id.* at 1478 n.8.

[43] Am. Compl. ¶ 28.

[44] Am. Compl. ¶ 33.

prospective new members.[45] These facts, if true, would be enough to show that Defendant Mitchell was a "moving force" in Defendant United Grand Lodge's decision to engage in the use of terms that the Plaintiff alleges are confusingly similar to the Plaintiff's marks. Therefore, the Defendants' Motion to Dismiss the Plaintiff's claims under Section 43(a) of the Lanham Act is denied as to both Defendants.

### 2. Trademark Dilution

The Plaintiff alleges that the Defendants have diluted the Plaintiff's service marks in violation of Section 43(c) of the Lanham Act.[46] A party bringing suit under Section 43(c) must prove that it is the owner of a "famous mark."[47] The Act defines as one that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."[48] Except for the vague assertion that the Plaintiff is "known nationwide" for the type of Masonry that it practices, the Plaintiff has not alleged any facts tending to show that the Plaintiff's marks are "famous" within

---

[45] Am. Compl. ¶ 33.

[46] 15 U.S.C. § 1125(c).

[47] *Id.* § 1125(c)(2)(A).

[48] *Id.*

the meaning of the statute.[49] Therefore, the Plaintiff's trademark dilution claim should be dismissed as to both Defendants.

### 3. Cybersquatting

The owner of a trademark may bring suit under the Anticybersquatting Consumer Protection Act against anyone who "has a bad faith intent to profit from that mark" and "registers, traffics in, or uses a domain name that... is identical or confusingly similar to that mark."[50] The Plaintiff does not allege that the domain name registered by the Defendants is identical or confusingly similar to their registered trademarks. Instead, the Plaintiff alleges that the "home page and other pages of the [Defendants'] website contain lettering that is almost identical, or confusingly similar to Plaintiff's marks."[51] These facts do

---

[49] Am. Compl. ¶ 32. *See Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1356-59 (S.D. Fla. 2012) (granting motion to dismiss where the plaintiff had made only conclusory statements about the fame of the plaintiff's mark and noting that trademark dilution claims are limited to "truly famous marks such as Budweiser beer, Camel cigarettes, and Barbie dolls") (quoting *Dahon N. Am., Inc. v. Hon*, No. 2:11–cv–05835–ODW (JCGx), 2012 WL 1413681, at *9 (C.D.Cal. Apr. 24, 2012)).

[50] 15 U.S.C. § 1125(d)(1)(A)(i)-(ii). Congress passed the Act in an attempt to curtail "cybersquatting." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009); S.Rep. No. 106–140 (1999), 1999 WL 594571, at *5–6. Cybersquatting is the act of "reserv[ing] with a network information center a domain name consisting of the mark or name of a company for the purpose of relinquishing the right to the domain name back to the legitimate owner for a price." *Eagle Hosp. Physicians, LLC.*, 561 F.3d at 1307 (quoting MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 24:17 (4th ed. 2008)).

[51] Am. Compl. ¶ 35.

not give rise to a claim under the Act because, as the plain language of the statute makes clear, the domain name itself must infringe on the trademark. Therefore, the Plaintiff's claim under the Act should be dismissed as to both Defendants.

B.   State Law Claims

1. Deceptive Trade Practices

The Plaintiff claims that the Defendants have engaged in deceptive trade practices in violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372. The Plaintiff contends that the Defendants' actions have created a likelihood of confusion as to the source of the Defendants' services and as to their affiliation, or lack thereof, with the Plaintiff.[52] The Plaintiff further contends that the Defendants have represented, directly or indirectly, that they have the "approval, characteristics, benefits, or qualities" associated with the Plaintiff.[53] These claims involve the same dispositive questions as do its claims under Section 43(a) of the Lanham Act.[54] Therefore, the Defendants' Motion to Dismiss is denied as to these claims for the same reasons provided in the

---

[52]   Am. Compl. ¶ 50.

[53]   *Id.*

[54]   *Energy Four, Inc. v. Dornier Med. Sys., Inc.*, 765 F. Supp. 724, 731 (N.D. Ga. 1991) (citing *Jellibeans, Inc.*, 716 F.2d at 839); *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, No. 1:04-CV-1082-TWT, 2005 WL 8154528, at *10 (N.D. Ga. Sept. 14, 2005) ("The Court's analysis of likelihood of confusion and disposition of the trademark infringement claim applies in the same manner to the deceptive trade practices claim [under the GUDTPA].").

forgoing discussion of the Plaintiff's claims under Section 43(a) of the Lanham Act.

### 2. Disparagement

The Plaintiff also contends that the Defendants disparaged the Plaintiff in violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372(a)(8). Unlike the Plaintiff's other claims involving likelihood of confusion, there is no analogous claim under the Lanham Act for disparagement.[55] In Georgia, maligned businesses may bring suit against persons who "in the course of [their] business, vocation, or occupation... disparag[e] the goods, services, or business of another by false or misleading representation of fact."[56] Case law interpreting this particular provision is sparse. Courts have generally applied common law defamation principles to claims brought under O.C.G.A. § 10-1-372(a)(8).[57] For example, the court in *Davita Inc. V. Nephrology Associates, P.C.* found that the plaintiff had properly

---

[55] *See Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 904 (9th Cir. 2007) ("[N]o such claim [for trademark disparagement] exists under the Lanham Act.").

[56] O.C.G.A. § 10-1-372(a)(8).

[57] *See Colorado Boxed Beef Co. v. Sherwood Food Distributors*, No. 1:07-CV-394-ODE, 2007 WL 9706421, at *11 (N.D. Ga. Apr. 10, 2007) (compiling cases).

pleaded a claim under O.C.G.A. § 10-1-372(a)(8) because it had alleged that the offending statements were false, published, and malicious.[58]

The Plaintiff has not pleaded with sufficient particularity to support a claim under O.C.G.A. § 10-1-372(a)(8). The Plaintiff alleges that the Defendants "have sent deceptive and improper communications to (a) other Masonic Lodges, or persons previously associated with Masonry; (b) persons familiar with certain Masonic procedures and traditions; and/or (c) online service providers and social media, all these means implying disparagement of Plaintiff's status and authority associated with the Yorkrite Masonic system."[59] The Plaintiff appears to be arguing that the Defendants, simply by holding themselves out as authorized practitioners of Yorkrite Masonry, have disparaged the Plaintiff by undermining its authority. This allegation is insufficient to support a claim under O.C.G.A. § 10-1-372(a)(8) because the Plaintiff does not allege that the Defendants made false or misleading claims about the Plaintiff's business. The Plaintiff also does not allege that the Defendants acted maliciously, which is a necessary element of such a claim.

The Plaintiff separately alleges that Defendant Mitchell has "deliberately and willfully engaged in instances of disparaging commentary of the [Plaintiff], by means of verbal and written comments, and/or communications via electronic

---

[58] *Davita Inc. v. Nephrology Assocs.*, P.C., 253 F. Supp. 2d 1370, 1380 (S.D. Ga. 2003).

[59] Am. Compl. ¶ 53.

social media in various outlets."[60] It is unclear whether this "commentary" is distinct from the communications discussed above. Again, however, the Plaintiff does not allege that any of Mitchell's statements were false or misleading, nor that he acted with malicious intent. As pleaded, the Complaint does not state a claim under O.C.G.A. § 10-1-372(a)(8) against either Defendant. Accordingly, the Plaintiff's state law trademark disparagement claim should be dismissed as to both Defendants.

### IV. Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss [Doc. 18] is GRANTED in part and DENIED in part.

SO ORDERED, this 4 day of October, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[60] Am. Compl. ¶ 55.